Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/16/2018 09:10 AM CST

State of Nebraska, appellee, v.
Christopher A. Edwards, appellant.
___ N.W.2d ___

Filed November 16, 2018.    No. S-17-1234.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals
   from postconviction proceedings, an appellate court reviews de novo a
   determination that the defendant failed to allege sufficient facts to dem-
   onstrate a violation of his or her constitutional rights or that the record
   and files affirmatively show that the defendant is entitled to no relief.
2. **Postconviction: Evidence.** No evidentiary hearing is necessary when a
   postconviction motion and the files and records of the case show to the
   satisfaction of the court that the prisoner is entitled to no relief.
3. **Appeal and Error.** An appellate court considers only those arguments
   that were both adequately assigned and argued in the appellant's brief.
4. **Postconviction: Pleadings: Time.** The Nebraska Postconviction Act
   contains a 1-year time limit for filing a verified motion for postconvic-
   tion relief, which runs from one of four triggering events or August 27,
   2011, whichever is later.
5. **Postconviction: Limitations of Actions: Proof.** To satisfy the tolling
   provision of Neb. Rev. Stat. § 29-3001(4)(c) (Reissue 2016), a prisoner
   must show there was (1) an impediment created by state action, (2)
   which amounted to a violation of the federal or state Constitution or a
   state law, and (3) as a result, the prisoner was prevented from filing a
   verified motion. If all these factors are satisfied, the 1-year limitation
   period will begin to run on the date the impediment was removed.

Appeal from the District Court for Douglas County: J
Russell Derr, Judge. Affirmed.

Brian Munnelly and Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust
for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ.

CASSEL, J.

## INTRODUCTION

After jurisdiction again vested in the district court following an appeal from the denial of Christopher A. Edwards' first motion for postconviction relief, he filed a second motion seeking postconviction relief. Prompted by the State, the district court denied the second motion without an evidentiary hearing. Because we agree that Edwards' second motion is barred by the limitation period set forth in Neb. Rev. Stat. § 29-3001(4) (Reissue 2016), we affirm the decision of the district court.

## BACKGROUND

### CRIMES, TRIAL, AND DIRECT APPEAL

In June 2006, the State charged Edwards with second degree murder and use of a deadly weapon to commit a felony in connection with the disappearance of Jessica O'Grady. Spattered blood was found on Edwards' nightstand, headboard, clock radio, and ceiling above his bed. The underside of Edwards' mattress contained a large, damp bloodstain. Investigators discovered blood on a short sword in Edwards' closet, on the trunk gasket of Edwards' car, and on the underside of the car's trunk lid. DNA profiles from this blood were consistent with O'Grady's profile. A jury convicted Edwards of both charges.

Steven J. Lefler and two other attorneys represented Edwards at trial. Through the same counsel, Edwards appealed. We affirmed Edwards' convictions on direct appeal.[1] Our mandate issued in July 2009.

### FIRST MOTION FOR POSTCONVICTION RELIEF

In July 2010, through new counsel, Edwards filed a motion for postconviction relief. He claimed that the State violated

---

[1] *State v. Edwards*, 278 Neb. 55, 767 N.W.2d 784 (2009).

his due process rights by presenting fabricated evidence. More specifically, Edwards alleged that David Kofoed, a supervisor of the Douglas County Crime Scene Investigation Division, planted blood evidence to be used against Edwards.

Edwards also alleged claims of ineffective assistance of trial and appellate counsel. One of his claims was that Lefler should have known that Kofoed was suspected of planting evidence during the murder investigation and that Lefler failed to investigate this information or to effectively impeach Kofoed at trial. Edwards claimed that Lefler had a potential conflict of interest because of his friendship with Kofoed. And Edwards alleged that his appellate counsel was ineffective in failing to raise claims of trial counsel's ineffective assistance.

In October 2010, the State moved to quash Edwards' subpoenas directed to the Douglas County sheriff's office and the University of Nebraska Medical Center. The motion stated, "There has been no indication that [Edwards] alleges that the State withheld information or evidence that would entitle him the opportunity to seek out discovery in this matter." The court granted the motion.

In December 2010, Edwards moved for leave to file an amended motion for postconviction relief. The amended motion contained several additional exhibits, which were documents from the Douglas County Crime Scene Investigation Division pertaining to the criminal investigation of Edwards. Although it is not in our record, the parties agree that this motion was granted.

On August 2, 2011, the district court overruled Edwards' first motion for postconviction relief without an evidentiary hearing. Edwards appealed.

In September 2012, we determined that two of Edwards' claims required an evidentiary hearing.[2] First, we recounted Kofoed's unlawful conduct during two other murder investigations and concluded that an evidentiary hearing was needed

---

[2] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012), *disapproved in part, State v. Avina-Murillo, ante* p. 185, 917 N.W.2d 865 (2018).

on Edwards' claim that the State presented fabricated forensic evidence at trial.

Second, we concluded that an evidentiary hearing was necessary on Edwards' claim that his trial counsel had a conflict of interest because of his relationship with Kofoed. We stated:

> We cannot know from this record whether before Edwards' trial, Kofoed had asked Lefler to represent him if he was later charged with a crime. Given allegations of their friendship and Lefler's undisputed representation of Kofoed against fabrication charges in 2009, Kofoed's possible request of representation is a prospect that the court should have considered. In addition, we cannot know from this record whether before Edwards' trial, law enforcement officers conducted an internal investigation of Kofoed's conduct in which Lefler had already represented or advised Kofoed. Finally, because of their friendship, Lefler may have learned of the allegations against Kofoed even without agreeing to represent him.[3]

We determined that an evidentiary hearing was necessary to discover whether Lefler knew of the allegations against Kofoed before Edwards' trial or whether a conflict of interest prevented him from cross-examining Kofoed about any pending investigation. We thus remanded the cause to the district court for an evidentiary hearing.

PROCEEDINGS FOLLOWING REMAND
ON FIRST MOTION

On May 3, 2013, after the remand but prior to the evidentiary hearing, Edwards filed a motion for leave to file a second amended motion for postconviction relief. The proposed amended motion set forth five claims: (1) Edwards' due process rights were violated because his convictions were based on fabricated evidence, (2) his due process rights were violated because the State failed to disclose material exculpatory

---

[3] *Id.* at 408, 821 N.W.2d at 702.

evidence, (3) his attorney failed to provide conflict-free representation, (4) the step instruction on the lesser-included offense of manslaughter failed to distinguish between the intent to kill associated with second degree murder and the intent to kill resulting from a "sudden quarrel," and (5) cumulative error deprived him of his right to substantive due process under the 14th Amendment. In June, Edwards filed a supplemental showing regarding this motion.

The district court overruled Edwards' motion for leave to file an amended motion and the supplemental showing to the extent that they sought to expand the scope of our mandate. The court stated that our mandate specifically set out the scope of the remand and that the court was limited to those issues.

In March and April 2014, the district court conducted an evidentiary hearing on the two issues from the first motion for postconviction relief. The court heard evidence regarding whether the State knowingly used fabricated evidence and whether Lefler operated under a conflict of interest. With regard to the examination of Lefler, the court stated that the relevant timeframe was what Lefler knew from the time of voir dire to the conclusion of Edwards' trial. But the court also stated that it would "allow some leeway here to make a record." Ultimately, the court rejected Edwards' claims for postconviction relief.

On appeal, Edwards assigned that the district court erred in refusing to grant leave to amend his original postconviction motion, failing to find that his counsel had an actual conflict of interest, and failing to find that the State knowingly used fabricated evidence.

In a July 1, 2016, opinion, we rejected Edwards' claims.[4] We determined that Edwards' assignment of error concerning the denial of his motion to amend his original postconviction motion lacked merit. We reasoned:

---

[4] *State v. Edwards*, 294 Neb. 1, 880 N.W.2d 642 (2016).

*At the time of filing his motion to amend the postconviction proceeding, assuming without deciding that Edwards was not procedurally or time barred, Edwards could have filed a second postconviction proceeding alleging the claims he attempted to raise on remand.* We have held that a subsequent postconviction motion is allowed when the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time of the filing of the prior motion. Edwards asserts that such is the case here. Accordingly, we conclude that Edwards could have filed a second postconviction proceeding asserting the claims that he alleged he was unable to raise in the first postconviction proceeding. Therefore, the district court did not deprive Edwards of a substantial right or just result and did not abuse its discretion by denying his motion to amend his first post-conviction claim.[5]

Next, we found that Edwards failed to prove by a preponderance of the evidence that his trial counsel operated under a conflict of interest. We stated, "The record simply does not support a finding that Lefler had such a loyalty to Kofoed that would have tempted him at trial to act against Edwards' interests."[6] We further determined that "[e]ven assuming that Lefler had any loyalty to Kofoed, Edwards fails to point to any situation during or prior to his trial in which Lefler acted in Kofoed's interest and against Edwards' interest."[7]

Finally, we rejected Edwards' claim that the State knowingly used fabricated evidence. We determined that the district court did not commit clear error in finding that Kofoed did not fabricate evidence in Edwards' case or in finding that Edwards failed to prove the State knowingly used fabricated evidence. Our mandate issued on October 3, 2016.

---

[5] *Id.* at 21, 880 N.W.2d at 654-55 (emphasis supplied).

[6] *Id.* at 22, 880 N.W.2d at 655.

[7] *Id.* at 23, 880 N.W.2d at 655.

### Second Motion for Postconviction Relief

On October 7, 2016, Edwards filed a second verified motion for postconviction relief. He alleged that he was prevented from raising the issues in his second motion for postconviction relief for reasons set forth in § 29-3001(4).

Edwards claimed that he was affirmatively denied the ability to obtain facts. He pointed to an order denying traditional discovery, the misrepresentation of facts by the Douglas County Attorney's office in its motion to quash, and the withholding of facts by agents of the State and by Lefler.

Edwards alleged that in late December 2012, attorney Jerry Soucie was retained as cocounsel to represent him. Soucie, due to his representation of individuals charged in connection with the murders of Wayne and Sharmon Stock and Brendan Gonzalez, had personal knowledge of facts that were unavailable to Edwards or his postconviction attorney through reasonable investigative efforts. Additional discovery relevant to Lefler's conflict of interest and the State's failure to disclose exculpatory information became available in connection with federal civil rights lawsuits filed in 2007 and 2008 by individuals wrongfully accused of the Stocks' murders.

A Douglas County sheriff's office internal affairs investigation report from June and July 2008 became available due to discovery in the civil rights suits. The report previously had been confidential and the subject of a federal protection order. The report enabled Edwards to learn of Lefler's direct involvement in the defense of Kofoed during the internal affairs investigation in May and June 2008—a period when Lefler was representing Edwards on direct appeal, before the reply brief was filed and before the case was argued and submitted. According to Edwards, the report showed that Kofoed admitted to the Douglas County sheriff's office and to Lefler that Kofoed had falsified a report regarding the collection of a blood sample from a vehicle related to the Stock murders, that Kofoed instructed a subordinate not to include Kofoed's

presence when photographs were taken of that vehicle, that Douglas County sheriff's office personnel told Kofoed not to file an amended report because it would look like a coverup, and that Lefler knew the Federal Bureau of Investigation told Kofoed that his story regarding how blood was found in the vehicle of an innocent man did not "'pass the smell test.'"

Edwards alleged that on May 14, 2013, Soucie was able to obtain a complete set of the crime scene investigation reports related to the Stock murder investigation. Also, he alleged that only then did he learn that a former Nebraska State Patrol investigator was suspicious of Kofoed's conduct in the Stock and Gonzalez cases and also wondered about the blood supposedly found on the sword in the O'Grady case.

Edwards' second motion for postconviction relief set forth three grounds for relief. The first ground alleged a violation of due process based on the failure to disclose materially exculpatory impeachment evidence to Edwards related to Kofoed's "propensity to fabricate evidence and falsify reports." Edwards alleged that law enforcement officials involved in Edwards' prosecution team were aware of information that Kofoed falsified reports. Specifically, he alleged that the Douglas County Attorney, the Douglas County sheriff, and a crime scene investigator were aware of circumstantial evidence that Kofoed had fabricated evidence in the Stock murder investigation and that such evidence was exculpatory impeachment evidence with respect to Kofoed's involvement in the collection of the forensic evidence in Edwards' prosecution. Edwards claimed that the failure of the State and its agents to disclose such information to Edwards violated due process and the decisions in *Brady v. Maryland*[8] and *Kyles v. Whitley*.[9]

Edwards alleged that Lefler's examination and cross-examination of all Douglas County sheriff's office crime scene

---

[8] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[9] *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

investigation personnel at trial was significantly restricted if he did not have the details regarding how Kofoed fabricated evidence in the Stock and Gonzalez investigations. Edwards asserted that because agents for the State withheld Kofoed's misconduct, Lefler focused his closing argument on the lack of a body and did not mention possible contamination of the evidence discussed by Kofoed. On the other hand, the State relied specifically on the validity and reliability of the DNA evidence showing O'Grady's DNA on various items.

The second ground raised in the motion was that Lefler had an actual conflict of interest in his representation of Edwards on appeal. Edwards alleged that between May 2008 and July 28, 2009, Lefler concurrently represented Edwards and Kofoed. According to Edwards, Lefler represented him from June 2006 until July 28, 2009. Edwards claimed that Lefler acted under an actual conflict of interest because he could not use the information he obtained during his representation of Kofoed regarding Kofoed's propensity to falsify reports and fabricate evidence. Further, Edwards alleged that if he received a new trial, Lefler's representation of Kofoed would be problematic, thus presenting a significant financial reason for Lefler to not want Edwards' convictions reversed.

Edwards claimed that Lefler failed to take a number of actions due to his conflict of interest. He alleged that Lefler failed to file a timely motion for new trial based on newly discovered evidence when Lefler became aware of the facts regarding the Stock murder investigation. Edwards claimed that Lefler should have assigned error in a replacement or supplemental brief that the State failed to comply with *Brady* by disclosing the "'cross-contamination'" theory of Kofoed in the Stock investigation or the "'evidence planting'" theory of other attorneys in the criminal prosecutions. He alleged that Lefler should have requested leave to withdraw the previous brief after criminal charges were filed against Kofoed in April 2009, requested a remand to investigate the allegations from the Stock investigation as they related to Edwards' prosecution, or filed a supplemental brief asserting

errors based on the factual allegations in the criminal prosecutions against Kofoed.

Edwards took issue with a number of Lefler's actions while Lefler represented Edwards on direct appeal. During that time, Lefler became aware of the Federal Bureau of Investigation's allegations against Kofoed, accepted a retainer from Kofoed, represented Kofoed in the internal affairs investigation, appeared as Kofoed's private attorney in the civil rights cases, accompanied Kofoed to a federal grand jury, and defended Kofoed against criminal charges. According to Edwards, Lefler did not disclose information that he learned during his representation of Kofoed, such as Kofoed's admission of falsification of reports, a coverup by the sheriff's office in not amending one of Kofoed's reports, and the falsification of evidence by Kofoed during the Stock and Gonzalez investigations.

The third ground raised by Edwards concerned the step instruction on the lesser-included offense of manslaughter. Edwards alleged that the instruction given failed to distinguish between the intent to kill associated with second degree murder and intent to kill resulting from a "sudden quarrel." According to Edwards, the court's instruction failed to properly advise the jury through a negative element instruction that any intent to kill associated with second degree murder could not be the result of a sudden quarrel. Edwards asserted that he could not have earlier raised this issue, because it was not until after the appeal of the denial of an evidentiary hearing on August 25, 2011, that this court decided the cases relevant to his claim.[10]

The State moved to dismiss Edwards' motion for postconviction relief. The State alleged that the motion should be denied because it was filed outside of the time limits contained

---

[10] See, *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013); *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012); *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

in § 29-3001(4) and that it should be denied as a successive motion.

The district court denied Edwards' request for an evidentiary hearing and sustained the State's motion to dismiss. The court focused on when the facts alleged in the motion could have been discovered, not when Edwards realized they were significant. The court noted that the proposed amended motion, which Edwards sought to file in May 2013, raised the same issues as those set forth in the second motion for postconviction relief. Thus, the court stated that "these issues clearly were discoverable and in fact, were discovered, years before the filing of the 2nd Motion."

The court also stated that the operative motion was a successive attempt at postconviction relief. It determined that the issues asserted in the second motion were known or knowable at the time the first motion was filed.

Finally, the court rejected the jury instruction issue. It stated that because *State v. Smith*,[11] a 2011 decision, was released after Edwards' direct appeal was affirmed, the court did not err by providing jury instructions that complied with the law at the time of Edwards' trial. The court determined that Edwards was not entitled to retroactive application of the rule in *Smith*, because Edwards' direct appeal was not still pending when *Smith* was decided.

Edwards filed a timely appeal.

## ASSIGNMENT OF ERROR

Edwards assigns that the district court erred in denying an evidentiary hearing on his second motion for postconviction relief.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant

---

[11] *State v. Smith, supra* note 10, 282 Neb. 720, 806 N.W.2d 383 (2011).

failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[12]

## ANALYSIS

[2,3] Before considering whether the claims raised in Edwards' second motion for postconviction relief are barred, we recall governing principles in two areas. First, an evidentiary hearing must be granted when the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied.[13] But no evidentiary hearing is necessary when "the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief."[14] Second, we consider only those arguments that were both adequately assigned and argued in the appellant's brief.[15] Because the argument section of Edwards' appellate brief addresses only his ineffective assistance of counsel/conflict of interest claim, we limit our analysis accordingly.

[4] The Nebraska Postconviction Act contains a 1-year time limit for filing a verified motion for postconviction relief, which runs from one of four triggering events or August 27, 2011, whichever is later.[16] Edwards refers to "§ 29-3001(4)" a number of times throughout his brief. However, it is unclear which, if any, subsection he believes extended the date to file his motion. Edwards had until August 27, 2012, to file his motion for postconviction relief, unless one of the triggering events extended the date beyond August 27, 2012.

Section 29-3001(4) sets forth four triggering events. They are:

---

[12] *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018).

[13] *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018).

[14] § 29-3001(2).

[15] See *State v. Haynes, supra* note 13.

[16] *State v. Lotter, ante* p. 125, 917 N.W.2d 850 (2018).

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review[.]

Despite Edwards' failure to argue a particular triggering event that he believes makes his October 2016 motion timely, we consider each possibility.

Two of the triggering events clearly do not assist Edwards. His convictions became final in 2009, so § 29-3001(4)(a) does not extend the period beyond August 27, 2012. And § 29-3001(4)(d) has no application, because Edwards does not assert a newly recognized right in connection with his ineffective assistance of counsel claim.

Under § 29-3001(4)(b), Edwards had 1 year from the date on which the factual predicate of his claim of ineffective assistance of counsel could have been discovered through the exercise of due diligence. He could have discovered that Lefler concurrently represented Kofoed when discovery in one of the federal civil rights suits became publicly available on August 30, 2010. Edwards does not contend that he or his counsel were unaware of those cases. They were based on allegations that Kofoed falsified evidence. Similarly, a focus of Edwards' first motion for postconviction relief—initially filed in July 2010—was the investigation and conviction of Kofoed for

fabricating evidence and falsifying official reports. It is reasonable to think that Edwards' postconviction counsel would be keenly interested in the federal civil rights suits. Thus, once the discovery became publicly available in August 2010, "the factual predicate of the constitutional claim . . . could have been discovered through the exercise of due diligence."[17] We conclude that § 29-3001(4)(b) does not extend the time for filing beyond August 27, 2012.

[5] To satisfy the tolling provision of § 29-3001(4)(c), a prisoner must show there was (1) an impediment created by state action, (2) which amounted to a violation of the federal or state Constitution or a state law, and (3) as a result, the prisoner was prevented from filing a verified motion. If all these factors are satisfied, the 1-year limitation period will begin to run on the date the impediment was removed.[18]

Edwards' argument fails at the first step. In *State v. Amaya*,[19] we stated that the prisoner had not shown how the alleged ineffective assistance of his postconviction counsel was "'created by state action.'" Similarly, Edwards has not shown how Lefler's conflict of interest was "created by state action." We recognize that in July 2009, Douglas County retained Lefler to represent Kofoed in the federal civil rights suits. But prior to that time—in June 2008—Kofoed hired Lefler to represent him in connection with the internal affairs investigation. Thus, the conflict of interest present in June 2008 was not created by state action. Because Edwards cannot meet all of the factors, the tolling provision of § 29-3001(4)(c) does not apply.

To the extent that Edwards alleges facts purporting to show that state action prevented him from learning about Lefler's conflict of interest, his own motion shows that he obtained such information in May 2013. Any impediment was removed at that time. Still, Edwards did not file his motion until 2016.

---

[17] § 29-3001(4)(b).

[18] *State v. Amaya*, 298 Neb. 70, 902 N.W.2d 675 (2017).

[19] *Id.* at 79, 902 N.W.2d at 682.

Edwards attempted to avoid this result in two ways. Both have no merit.

Before the district court, Edwards argued that the period under § 29-3001(4) should be tolled while the appeal concerning his first motion was pending. We recognize that the scope of our mandate precluded the district court from enlarging the issues presented on his first motion. The district court properly refrained from acting outside the scope of our remand; thus, refusal to allow the amendment was not "in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state."[20]

In arguing Edwards' second motion for postconviction relief, he asserted that "the clerk of the district court will refuse to accept anything, in terms of a second post-conviction motion or anything of that nature, until the mandate and jurisdiction's been returned to the court." But nowhere in his second motion did he allege that he actually tried to file a second motion—as opposed to his attempt to file a second amendment to his first motion—and was prevented from doing so. Once again, this allegation was not sufficient to plead that he was prevented from filing his motion due to a state-created impediment.

Edwards waited until October 2016 to file his second motion for postconviction relief. The motion is barred by the time limitation of § 29-3001(4).

## CONCLUSION

We agree with the district court that Edwards' second motion for postconviction relief is barred by the limitation period set forth in § 29-3001(4). Accordingly, we affirm the court's decision.

AFFIRMED.

FREUDENBERG, J., not participating.

---

[20] See § 29-3001(4)(c).